## Mengel Box Company v. Hall.

(Decided June 13, 1913.)

### Appeal from Fulton Circuit Court.

1. Damages—Action for Breach of Contract—Contract of Employment—Change of Contract—Evidence.—Following an injury to appellee resulting in the amputation of a leg, appellant's adjuster paid him $260, and as appellee contends entered into a contract with him to give him employment for life. Upon being informed by the foreman that the appellant could not employ him, he instituted this action for damages for breach of contract. Upon the issue as to the change in the contract, the adjuster stated in general terms that the contract as written was the true contract, but he does not deny that he made the interlineation in it or that he read out the contract as claimed by appellee and his witness who was present at the time of its execution.

2. Contracts—Action for Breach of—Instructions.—The contention of appellant that a peremptory instruction should have been given because appellee had not shown that he had applied to the manager and principal agent for employment cannot be sustained because the evidence shows there are sub-managers over the different departments of appellant's large business, and that appellee did apply several times to the manager of the department in which he had worked.

3. **Damages—Action for Breach of Contract—Instructions.—**There is no merit in the contention that the court improperly refused to instruct the jury to find for defendant if they believed the adjuster had no authority to make the settlement for the reason that there was no evidence upon which to base such an instruction.

TYLER & AMBERG for appellant.

HESTER & HESTER for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

On the 20th of June, 1911, appellee while employed by appellant was injured, as a result of which it was necessary to amputate one of his legs.

After about eight weeks he was able to get around again on his crutches, and returned to work for appellant, but at the end of about two weeks he again had trouble with his leg, and was compelled to quit.

About the time he began to recover from this back set, he was threatening to institute suit against the company, negotiations looking to a settlement were pending between him and E. L. Howard, the company's adjuster, whose business it was to settle such claims. Finally on the 12th of September they reached an agreement as alleged by appellee, whereby the company was to pay him $260 in cash and all of the expenses of his illness, and give him employment for life either in feeding a glue machine or marking bundles in its factory at the same wages he was receiving when injured which was $1.50 per day.

After reaching these terms, Howard left appellee's home, went to the office of the company and returned with a check for $260, and a printed form of contract, the blank spaces in which were filled out in his (Howard's) hand writing. The writing was signed by appellee in the presence of his wife, Howard, and his step-daughter, Miss Hatley.

As soon as appellee was able, he applied to the foreman under whom he had formerly worked for his position, and he was referred by him to another, who in turn sent him back to the foreman. This occurred several times, and he was finally informed by the foreman that they were under no obligation to employ him, and had no place for him. Thereupon, he instituted this action for damages for breach of the contract, and the jury returned a verdict for $2,500 in his favor, and the company appeals.

The company in its answer denied that there was any contract of employment, and produced the written contract which had nothing in it about any employment whatever. The original contract was filed with the answer, and on that same day the plaintiff filed an amended petition wherein he alleged that he had just seen the written contract for the first time since its execution, and that the defendant's agent had fraudulently represented to him at the time of its execution that it contained the employment agreement, and had at the time read over said contract to the plaintiff before he signed the same as containing said agreement, and that he believed at the time he signed it that it did contain the same, and that Howard falsely read the contents of said writing to the plaintiff for the fraudulent purpose of deceiving him. The affirmative allegations in this amendment were by agreement traversed on the record.

The evidence of the plaintiff and Miss Hatley is that after Howard came back from the factory with the check and contract, that appellee said he wanted to read the contract before he signed it, and that Howard said that he was in a hurry, that he wanted to catch a train and that he would read it; that after he (Howard) got back to the house, he made some interlineation in the contract, and then read it aloud, and read it as containing an agreement to employ appellee for life at $1.50 per day, either in feeding a glue machine or marking bundles, and that immediately after it was signed, Howard took the contract and left.

Howard's testimony states in general terms that the contract as written was the true contract between the parties, but does not specifically deny either that he made an interlineation while at appellee's house, or that he read out the contract as claimed by appellee and Miss Hatley.

The appellant's contention that a peremptory instruction should have been gven upon the ground that appellee had not shown that he had ever applied to the manager and principal agent of appellant to give him employment and had never been denied such employment by such manager and principal agent, cannot be sustained.

The evidence is that appellant's business is a very large one, and is sub-divided in such way that certain sub-managers or bosses have charge of their respective departments, and that appellee did apply several times to the manager or boss of the department in which he

had formerly worked, and that said sub-manager had the authority to employ and discharge those under him.

Appellant also complains that the court refused to instruct the jury as requested by it that if they believe Howard had no authority to make the settlement as alleged, that they should find for the defendant, but there was no evidence upon which to base any such instruction; the evidence of Howard himself showed that he was the regular adjuster of such claims against the company, and had adjusted nearly all the claims of that character against the company for two years.

The instructions given by the court fairly presented the issues and are not seriously objected to.

It is shown by appellee that he sought other employment, but that by reason of his crippled condition there was very few things that he could do, and that his earning capacity was very limited; he was only twenty-four years of age at the time of the accident, and was a strong and healthy man, then earning $1.50 per day.

Under these circumstances the judgment for $2,500 can in no sense be considered excessive.

Judgment affirmed.